## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| **RUBBERMAID INCORPORATED d/b/a** **RUBBERMAID MEDICAL SOLUTIONS,** | |
| **Plaintiff,** | **Civil Action No. 3:12-cv-00416-RJC-DSC** |
| **v.** | **Chief Judge Robert J. Conrad, Jr.** |
| **ERGOTRON, INC.,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## RUBBERMAID INCORPORATED D/B/A RUBBERMAID MEDICAL SOLUTIONS' P.R. 4.5 OPENING CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

I.   **INTRODUCTION** ...................................................................................1

    A. Factual Background .....................................................................1

    B. The '650 Patent Claims at Issue ...............................................2

    C. Rubbermaid's Proposed Constructions ...................................3

II.  **LEGAL STANDARDS** ..........................................................................4

III. **CLAIM CONSTRUCTIONS** ................................................................7

    A. The Claim Language and Specification Require Specific
    Constructions of the Terms "Work Platform," "Compartment,"
    "Driver," "Plurality of Heights," and "Laptop Platform." ..........7

        1. *"Work Platform" Should Be Construed as "a Height Adjustable Set
        of Components Configured to Be Raised and Lowered Together."* ..........7

            a. **Rubbermaid's Proposed Construction of
            "Work Platform" Is Dictated by the Claim Language.** ..........7

            b. **Rubbermaid's Proposed Construction of
            "Work Platform" Is Further Supported by the Specification.** .. 9

        2. *"Compartment for Containing an Item Within the Compartment,"
        "Compartment for Containing an item," and "Compartment"
        Should Be Construed as "a Drawer or Other Type of Container That
        is Enclosed When Inserted Into the Work Platform of Which
        It Forms a Part."* ..........................................................................10

            a. **The Claim Language Emphasizes that the "Compartment
            for Containing an Item Within the Compartment" Must Be
            Part of the Work Platform and Must Be Configured to
            Contain an Item Within the Compartment.** ..........................10

            b. **The Specification Makes Clear that the Claimed
            "Compartment for Containing an Item Within the
            Compartment" Differs from Other Storage Areas and Must
            Be Construed Accordingly.** .....................................................11

Case 3:12-cv-00416-RJC-DSC   Document 35   Filed 05/10/13   Page 2 of 31

3. *"Driver" and "Driver Configured to Releasably Position the Work Platform" Should Be Construed as "**the Mechanical Part or Parts of the Height Adjustment Mechanism That are Controlled by the Actuator and That Releasably Position the Work Platform**."* .................................................................. 15

4. *"Plurality of Heights" Should Be Construed as "**a Lowest Position, a Highest Position,"** and a Position Between Them."* ................ 16

5. *"Laptop Platform" Should Be Construed as "**a Movable Portion of the Work Platform Suitable for Supporting a Laptop**."* ................ 17

**B. The Remaining Disputed Terms Should Be Given Their Plain and Ordinary Meaning.** ................................................ 18

1. *"Work Surface"; "Actuator for Controlling the Driver"; "Wherein the Work Surface is Movable"; "Wherein the Work Surface Can Be Moved"; and "Movable Platform"* ............................. 19

2. *"Height Adjustment Mechanism" and "Height Adjustment Mechanism for Adjusting a Height of the Work Platform Relative to the Base"* ........................................................ 20

3. *"At Least One Compartment"; "The at Least One Compartment"; and "Disposed Above a Top of the at Least One Compartment"* ........ 22

**IV.    CONCLUSION** ...................................................... 25

Case 3:12-cv-00416-RJC-DSC   Document 35   Filed 05/10/13   Page 3 of 31

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012)..................................................................18, 20

*Alcon Research, LTD v. Apotex Inc.*,
  687 F.3d 1362 (Fed. Cir. 2012)..........................................................................18

*Bicon, Inc. v. Straumann Co.*,
  441 F.3d 945 (Fed. Cir. 2006)............................................................................17

*Bowers v. Baystate Techs., Inc.*,
  320 F.3d 1317 (Fed. Cir. 2003)..........................................................................16

*Edwards Lifesciences LLC v. Cook Inc.*,
  582 F.3d 1322 (Fed. Cir. 2009)............................................................................5

*Flo Healthcare Solutions, LLC v. Kappos*,
  697 F.3d 1367, 1372 (Fed. Cir. 2012)..........................................................21, 22

*Gemstar-TV Guide Int'l, Inc. v. ITC*,
  383 F.3d 1352 (Fed. Cir. 2004)............................................................................6

*Home Diagnostics, Inc. v. LifeScan, Inc.*,
  381 F.3d 1352 (Fed. Cir. 2004)............................................................................5

*Howmedica Osteonics Corp. v. Wright Medical Technology, Inc.*,
  540 F.3d 1337 (Fed. Cir. 2008)....................................................................23, 24

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
  558 F.3d 1368 (Fed. Cir. 2009)..........................................................................14

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004)..............................................................................6

*Masco Corp. v. United States*,
  303 F.3d 1316 (Fed. Cir. 2002)..........................................................................14

*Nazomi Commc'ns, Inc. v. ARM Holdings, PLC*,
  403 F.3d 1364 (Fed. Cir. 2005)......................................................................6, 20

*OSRAM GmbH v. ITC*,
  505 F.3d 1351 (Fed. Cir. 2007)..........................................................................13

*Paragon Solutions, LLC v. Timex Corp.*,
  566 F.3d 1075 (Fed. Cir. 2009)..........................................................................18

Case 3:12-cv-00416-RJC-DSC   Document 35   Filed 05/10/13   Page 4 of 31

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ...................................................................... *passim*

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002) ............................................................................... 6, 20

*Unique Concepts, Inc. v. Brown*,
    939 F.2d 1558 (Fed. Cir. 1991) ....................................................................................... 17

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ....................................................................................... 6, 7

*Wyeth v. Sandoz, Inc.*,
    570 F. Supp. 2d 815, 826 (W.D.N.C. 2008) .............................................................. 6, 20, 21

*Zircon Corp. v. Stanley Black & Decker, Inc.*,
    452 F. App'x 966 (Fed. Cir. 2011) ................................................................................... 7

## OTHER AUTHORITIES

*Merriam-Webster's Collegiate Dictionary* (11th ed. 2003) ................................................... 11, 16

*Random House Webster's Unabridged Dictionary* (2d ed. 2001) .......................................... 11, 16

Pursuant to P.R. 4.5 and this Court's Claim Construction Scheduling Order (Dkt. No. 20), Plaintiff Rubbermaid Incorporated d/b/a Rubbermaid Medical Solutions ("Rubbermaid") respectfully submits this Opening Claim Construction Brief in support of its proposed claim constructions for U.S. Patent No. 8,215,650 (the "'650 Patent") (attached as Exhibit A).

# I.  INTRODUCTION

## A.  Factual Background

Technological innovations have revolutionized the healthcare industry in recent years. As just one example detailed in Rubbermaid's '650 Patent, hospitals now widely use Electronic Medical Administration Records ("EMAR") to electronically track medications and administered services.  *See* '650 Patent col.1 ll.27–33.  Laptop-equipped medical carts allow nurses and other healthcare professionals to use EMAR at the point of care, helping to ensure that the right patients receive the right medication at the right time.  *Id.* at col.1 ll.27–41.

Until recently, however, these medical carts suffered from a number of serious flaws. For example, they lacked sufficient work space and medication drawers, and they failed to locate these components in a manner to facilitate optimal performance.  *Id.* at col.1 ll.43–50.  Perhaps most importantly, the carts were not ergonomically designed, which hampered utility, prevented nurses from raising and lowering the carts with ease, and often led to chronic back pain.  *Id.*

Numerous healthcare equipment providers tried and failed to solve these problems. Rubbermaid, however, developed a novel solution in the '650 Patent: a medical cart containing the critical components for the healthcare provider located optimally on one height adjustable work platform.  By enabling all components of the inventive work platform to be raised and lowered together, Rubbermaid's invention permits healthcare providers to use the cart at a variety of sitting or standing positions, with performance-critical work areas and medication

1

containers at their fingertips.  The '650 Patent thus represents an important advance in the delivery of healthcare to patients.

Rubbermaid obtained the '650 Patent on its innovative medical cart on July 10, 2012.[1] This lawsuit involves the willful infringement of Rubbermaid's '650 Patent rights by competitor Ergotron, Inc. ("Ergotron").

**B.  The '650 Patent Claims at Issue**

The asserted claims of the '650 Patent are claims 1, 5, 6, 9, and 12–15.  Claims 1 and 9 are independent claims, while the remaining asserted claims depend from claims 1 or 9.  Claim 1 states as follows (with disputed claim terms underlined):

A cart comprising:
a work platform including a work surface and at least one compartment for containing an item within the compartment, wherein the work surface is disposed above a top of the at least one compartment;
a base configured to be movable in at least a rearward direction; and
a height adjustment mechanism for adjusting a height of the work platform relative to the base, wherein the height adjustment mechanism is configured to releasably position the work platform at a plurality of heights, the height adjustment mechanism comprising:
a driver configured to releasably position the work platform; and
an actuator for controlling the driver,
wherein the base includes a portion projecting, relative to the height adjustment mechanism, in a forward direction that is substantially opposite to the rearward direction,
wherein the work platform includes a portion projecting, relative to the height adjustment mechanism, in the forward direction, wherein the compartment is disposed in the portion of the work platform projecting in the forward direction, and the compartment is configured to permit a user facing in the rearward direction to access the item within the compartment,
wherein the actuator is disposed above the compartment and on the portion of the work platform projecting in the forward direction, and
wherein the work surface is movable relative to a remainder of the work platform from an extended position to a non-extended position.

---

[1] The asserted claims of the '650 Patent are entitled to no later than a February 23, 2004 priority date.  That is the date on which Application No. 10/783,030, recited on the face of the '650 Patent, was filed.  Rubbermaid reserves its rights to seek an earlier priority date depending on, *inter alia*, claim construction.

2

'650 Patent col.14 ll.21–51.

    Claim 9 claims:

> A cart comprising:
> a <u>work platform</u> including a <u>movable platform</u>, a <u>work surface</u> movable relative to
>     the <u>movable platform</u>, and <u>at least one compartment for containing an</u>
>     <u>item</u>, wherein the <u>movable platform</u> and the <u>work surface</u> are <u>disposed</u>
>     <u>above a to [sic][2] of the at least one compartment</u>;
> a base configured to be movable in at least a rearward direction; and
> a <u>height adjustment mechanism for adjusting a height of the work platform</u>
>     <u>relative to the base</u>,
> wherein the base includes a portion projecting, relative to the <u>height adjustment</u>
>     <u>mechanism</u>, in a forward direction that is substantially opposite to the
>     rearward direction,
> wherein the <u>work platform</u> includes a portion projecting, relative to the <u>height</u>
>     <u>adjustment mechanism</u>, in the forward direction, <u>the at least one</u>
>     <u>compartment</u> is disposed in the portion of the <u>work platform</u> projecting in
>     the forward direction, and <u>the at least one compartment</u> is configured to
>     permit a user facing in the rearward direction to access the item within <u>the</u>
>     <u>at least one compartment</u>,
> wherein the <u>movable platform</u> can be moved in at least one of the forward and
>     rearward directions,
> <u>wherein the work surface can be moved</u> in at least one of a leftward direction and
>     a rightward direction relative to the <u>movable platform</u>, and
> wherein the <u>work surface</u> is configured to move in the at least one of the leftward
>     direction and rightward direction through a slot in a side of the portion of
>     the <u>work platform</u> projecting in the forward direction.

*Id.* at col.15 ll.14–43.

    Dependent claims 5, 6, and 12–14 do not contain additional terms requiring construction.

Dependent claim 15, which claims "[t]he cart of claim 9, wherein the movable platform is a

laptop platform," includes the disputed term "laptop platform."  *Id.* at col.16 ll.1–2.

## C.  Rubbermaid's Proposed Constructions

    Rubbermaid submits that the Court should construe the disputed terms of the '650 Patent

as follows:

---

[2] The parties have agreed that the Court should correct this typographical error and change "to"
to "top".

3

1.    "*Work platform*" should be construed as "**a height adjustable set of components configured to be raised and lowered together**" (claims 1, 5, 6, 9, 12–15).

2.    "*Compartment for containing an item within the compartment*," "*compartment for containing an item*," and "*compartment*," should be construed as "**a drawer or other type of container that is enclosed when inserted into the work platform of which it forms a part**" (claims 1, 5, 6, 9, 12–15).

3.    "*Driver*" and "*driver configured to releasably position the work platform*" should be construed as "**the mechanical part or parts of the height adjustment mechanism that are controlled by the actuator and that releasably position the work platform**" (claims 1, 5, 6).

4.    "*Plurality of heights*" should be construed as "**a lowest position, a highest position, and a position between them**" (claims 1, 5, 6).

5.    "*Laptop platform*" should be construed as "**a movable portion of the work platform suitable for supporting a laptop**" (claim 15).

In addition, the following disputed terms should be given their plain and ordinary meaning, without further construction by the Court: "*work surface*"; "*actuator for controlling the driver*"; "*wherein the work surface is movable*"; "*wherein the work surface can be moved*"; "*movable platform*"; "*height adjustment mechanism*"; "*height adjustment mechanism for adjusting a height of the work platform relative to the base*"; "*at least one compartment*"; "*the at least one compartment*"; and "*disposed above a top of the at least one compartment.*"

## II.    <u>LEGAL STANDARDS</u>

The starting point for claim construction is the "'bedrock principle'" that the claims define the scope of the patentee's rights.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (citation omitted).  "The claim language itself governs the meaning of the

4

claim." *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1355 (Fed. Cir. 2004). "[T]he claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002). A court should give the words in patent claims their "ordinary and customary meaning" to a person of ordinary skill in the art, *Phillips*, 415 F.3d at 1312−13, unless "the patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim term in either the specification or prosecution history," *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1329 (Fed. Cir. 2009) (citation and internal quotation marks omitted).[3]

Importantly, the Federal Circuit has recognized that a person of ordinary skill in the art does not understand the claims in a vacuum, but instead must be "deemed to read the claim term . . . in the context of the entire patent, including the specification" and prosecution history. *Phillips*, 415 F.3d at 1313. The specification—the written description of the patented invention—is in many instances "the single best guide to the meaning of a disputed term." *Id.* at 1315 (citation and quotation marks omitted). In using the specification to interpret claims, however, a court must be careful not to read limitations from the specification into the claims. *Id.* at 1323. "[A]lthough the specification often describes very specific embodiments of the invention, [the Federal Circuit has] repeatedly warned against confining the claims to those

---

[3] The parties have offered different positions regarding the level of ordinary skill in the art with respect to the '650 Patent. Rubbermaid submits that the proper definition here is "a person having at least a bachelor's degree in an engineering or other discipline involving product design with at least one year of experience in the design, manufacture, or analysis of mechanical devices." (Rubbermaid's Second Supplemental Resps. Def.'s First Set Disc. 5.) In contrast, Ergotron argues that the level of ordinary skill in the art is "a person having at least a bachelor's degree in mechanical engineering or the like with at least two years of experience in the design, manufacture, or analysis of mechanical devices." (Def. Ergotron's Disclosure Prelim. Proposed Constructions 4.) Ergotron's proposal is unduly narrow and ambiguous in requiring a degree in "mechanical engineering or the like," and it overstates the amount of practical design experience required.

embodiments."  *Id.*; *see also, e.g.*, *Nazomi Commc'ns, Inc. v. ARM Holdings, PLC*, 403 F.3d

1364, 1369 (Fed. Cir. 2005) (explaining that claims may "embrac[e] different subject matter than

is illustrated in the specific embodiments in the specification"); *Teleflex*, 299 F.3d at 1327 ("[A]n

accused infringer cannot overcome the 'heavy presumption' that a claim term takes on its

ordinary meaning simply by pointing to the preferred embodiment or other structures or steps

disclosed in the specification or prosecution history.").  This Court articulated this principle in

*Wyeth v. Sandoz, Inc.*:

> The court declines to import limitations from the specification into the claim
> language, particularly where, as here, the patentee did not clearly express an
> intent to act as its own lexicographer and did not set forth a precise, consistent
> definition of "extended release formulation" in the specification.  As such, the
> court concludes that the specification supports a broad construction of "extended
> release formation" as consistent with its ordinary meaning.

570 F. Supp. 2d 815, 826 (W.D.N.C. 2008) (internal citations omitted).

In fact, the Federal Circuit has "expressly rejected the contention that if a patent describes

only a single embodiment, the claims of the patent must be construed as being limited to that

embodiment."  *Phillips*, 415 F.3d at 1323; *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898,

906–08 (Fed. Cir. 2004) (same); *see also, e.g.*, *Gemstar-TV Guide Int'l, Inc. v. ITC*, 383 F.3d

1352, 1366 (Fed. Cir. 2004) ("[T]he disclosure in the written description of a single embodiment

does not limit the claimed invention to the features described in the disclosed embodiment.").

This makes perfect sense, as 35 U.S.C. § 112 requires that the claims themselves set forth the

limits of the patent grant, and those of ordinary skill generally would not confine their definitions

of terms to the exact representation depicted in the embodiments.  *Phillips*, 415 F.3d at 1323.

Although the intrinsic record comprised of the claims, specification, and prosecution

history is of primary importance, a court may also consider extrinsic evidence such as

dictionaries and learned treatises.  *Id.* at 1316–19; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d

1576, 1584 (Fed. Cir. 1996). As the Federal Circuit has explained, extrinsic evidence may be used to help the court come to the proper understanding of the claims, but "may not be used to vary or contradict the claim language." *Id.* "In this regard, it is never error to consider extrinsic evidence, it is only error to give it undue weight." *Zircon Corp. v. Stanley Black & Decker, Inc.*, 452 F. App'x 966, 972 n.5 (Fed. Cir. 2011).

## III. <u>CLAIM CONSTRUCTIONS</u>

**A. The Claim Language and Specification Require Specific Constructions of the Terms "Work Platform," "Compartment," "Driver," "Plurality of Heights," and "Laptop Platform."**

1. *"Work Platform" Should Be Construed as "**a Height Adjustable Set of Components Configured to Be Raised and Lowered Together**."*

The disputed claim term "work platform" is at the heart of the '650 Patent invention, and the inventors left no doubt regarding its intended meaning. In both the claims and the specification, the '650 Patent spells out precisely what the work platform is, and what the work platform is configured to do. Specifically, the claims and specification indicate that the work platform must include a set of specific components, and that the set of components forming the work platform must be able to be raised and lowered together to facilitate optimal use by the healthcare provider. Rubbermaid's proposed construction captures these requirements.

**a. Rubbermaid's Proposed Construction of "Work Platform" Is Dictated by the Claim Language.**

The claims of the '650 Patent themselves are unambiguous as to the meaning of "work platform." First, the claims mandate that the work platform contain specific enumerated components. For example, claim 1 requires a work platform that includes, at a minimum, "a work surface and at least one compartment for containing an item within the compartment." '650 Patent col.14 ll.22–24. Claim 9 adds another claimed component to the work platform—"a

movable platform"—and further provides that the work platform also comprises "a work surface movable relative to the movable platform, and at least one compartment for containing an item." *Id.* at col.15 ll.15–17. Dependent claims 12 and 13 require particular configurations of those components. *Id.* at col.15 ll.52–54 (claiming "[t]he cart of claim 9, wherein the work platform is configured such that the work surface can be disposed below the movable platform"); *id.* at col.15 ll.55–58 (claiming "[t]he cart of claim 9, wherein the work platform is configured such that the movable platform can be moved in the at least one of the forward and rearward directions without moving the work surface"). As such, all of the asserted claims demonstrate that the claimed "work platform" is a set of enumerated components.

Second, the claims require that the entire work platform, and the set of components that comprise it, must be configured to be raised and lowered together. Claim 1 is illustrative with respect to this additional "work platform" requirement. It provides that the claimed cart must contain "a height adjustment mechanism *for adjusting a height of the work platform* relative to the base," and that the height adjustment mechanism allows the work platform and its components to be "releasably position[ed] . . . at a plurality of heights." *Id.* at col.14 ll.28–31 (emphasis added); *see also* Claim 9, col.15 ll.22–23 (reciting "a height adjustment mechanism for adjusting a height of the work platform relative to the base"). Rubbermaid's proposed construction encompasses this essential claim feature of height adjustability.

Thus, the claims set forth very clearly what the "work platform" is and what the "work platform" is designed to do in the context of the '650 Patent invention.

### b. Rubbermaid's Proposed Construction of "Work Platform" Is Further Supported by the Specification.

The specification of the '650 Patent confirms that Rubbermaid's proposed construction of "work platform" is correct. The specification emphasizes time and again that the set of components comprising the work platform must be configured to be raised and lowered together.

For example, the specification points out that "[b]ecause each of these items is provided on the work platform 340, a user can ergonomically access each of these items as the work platform 340 is raised or lowered." '650 Patent col.4 ll.35–37. With respect to the compartments of the work platform, the specification adds that "[t]he plurality of compartments 530 face the user and move up and down with the work platform 340 (*i.e., they remain in the same position relative to the laptop platform 370*), which are ergonomically desirable features." *Id.* at col.7 ll.28–31 (emphasis added). Additional discussion of this important feature is found throughout the '650 Patent. *See, e.g.*, *id.* at col.8 ll.15–19 ("The work platform 340 may be raised and lowered by means of the support mechanism 320. This provides a sitting or standing user with easy access to the work surface 350 and its associated components (e.g., laptop platform 370, work surface 350, compartments 530, etc.)."); *id.* at col.8 ll.25–28 ("The height adjustment mechanism 400 enables a standing user or a sitting user to ergonomically raise and lower the work platform 340."); *id.* at col.9 ll.32–38 ("[W]hen the work platform 340 is raised it may be releaseably locked at any position between the lowest position and the height [sic] position by releasing the button 444. As a result, each component of the work platform 340 (including the bi-directional laptop platform 370 and the compartments 530) is ergonomically available to a user when sitting or standing.")

In this fashion, the specification points to precisely the same construction as the claim language.[4] The inventors of the '650 Patent used the term "work platform" in a specific way to mean "a height adjustable set of components configured to be raised and lowered together." That is the construction this Court should adopt.

    2.   *"Compartment for Containing an Item Within the Compartment," "Compartment for Containing an Item," and "Compartment" Should Be Construed as "**a Drawer or Other Type of Container That Is Enclosed When Inserted Into the Work Platform of Which It Forms a Part**."*

The intrinsic record likewise demands a specific construction of the disputed claim terms "compartment for containing an item within the compartment," "compartment for containing an item," and "compartment" (collectively, "compartment for containing an item within the compartment"). These terms are found in each of the asserted claims. The claim language, read together with the specification, demonstrates that the claimed "compartment for containing an item within the compartment" does not merely refer to any generic type of storage space. Rather, the '650 Patent makes clear that this claimed compartment, the intended use of which is safe medication storage, is a container that is enclosed when inserted into the work platform of which it forms a part. The '650 Patent specifically distinguishes this claimed compartment from unenclosed storage spaces such as bins and cup holders.

    a.  **The Claim Language Emphasizes that the "Compartment for Containing an Item Within the Compartment" Must Be Part of the Work Platform and Must Be Configured to Contain an Item Within the Compartment.**

Aligned with Rubbermaid's proposed construction, the asserted claims of the '650 Patent make plain that the compartment forms a part of the work platform. *See id.* at col.14 ll.22–24

---

[4] Nothing in the prosecution history of the '650 Patent limits or alters the definition of "work platform" provided in the claims and specification. Moreover, extrinsic evidence with respect to the term is unnecessary and unhelpful given the meaning dictated by the claim language and specification.

10

(requiring "a work platform including . . . at least one compartment for containing an item within the compartment"); *id.* at col.15 ll.15−17 (requiring "a work platform including . . . at least one compartment for containing an item"). Moreover, the claims indicate that, unlike an unenclosed storage space such as a shelf, the compartment must serve the specific function of "containing an item within the compartment." *Id.* at col.14 ll.23−24; *see also id.* at col.15 ll.16−17 & 31−34 (reciting "at least one compartment for containing an item" and requiring that "the at least one compartment is configured to permit a user facing in the rearward direction to access the item within the at least one compartment").

In using the term "compartment for containing an item within the compartment," the '650 Patent inventors distinguished from generic storage areas. This is further borne out by the accepted meaning at the time of the invention of the words that the inventors chose to designate enclosure. *See, e.g.*, Merriam-Webster's Collegiate Dictionary 252 (11th ed. 2003) (defining "compartment" to mean "2: one of the parts into which an enclosed space is divided") (attached as Exhibit B); *id.* at 1439 (defining "within" as "1—used as a function word to indicate enclosure or containment"); Random House Webster's Unabridged Dictionary 2183 (2d ed. 2001) (defining "within" as "4. inside an enclosed place, area, room, etc." or "6. in or into the interior of or the parts or space enclosed by") (attached as Exhibit C).

    **b. The Specification Makes Clear that the Claimed "Compartment for Containing an Item Within the Compartment" Differs From Other Storage Areas and Must Be Construed Accordingly.**

In addition to the support in the plain language of the claims, Rubbermaid's proposed construction of "compartment for containing an item within the compartment" comports with the specification. Indeed, in repeatedly contrasting the claimed compartment from unenclosed storage spaces, the specification leaves no room for any alternative construction.

11

Figures 1, 7, and 8 are particularly instructive as to the meaning of this disputed term:



Fig. 1     Fig. 7     Fig. 8

'650 Patent Figs. 1, 7, 8 (highlighting added).  Figure 1 shows "a perspective view of a first embodiment of a medical cart according to the present invention."  *Id.* at col.3 ll.14–15.  The claimed compartments, highlighted above in yellow, are designated in Figure 1 as component 530 and are shown as fully enclosed when inserted into the work platform 340.  *See id.*; *see also id.* at col.4 ll.30–33 ("The work platform 340 can include . . . one or more lockable compartments 530 . . . .").

Figures 7 and 8 then show the work platform of Figure 1 separated into its component parts.  Figure 8 depicts "a perspective view of different sized *compartments* configured to be *inserted into* the medical cart of FIG. 1."  *Id.* at col.3 ll.35–37 (emphasis added) (designating the compartments as 530A-E).  Figure 7 "is a perspective view of a work platform of the medical cart of FIG. 1 *without compartments*."  *Id.* at col.3 ll.33–34 (emphasis added).  Viewing these

12

Figures together demonstrates that the claimed compartment is (a) a drawer or other type of container, (b) that is enclosed when inserted into, (c) the work platform of which it forms a part.

This reading is further buoyed by the explanation in the specification that the work platform "houses the at least one compartment." *Id.* at col.2 ll.38–39. Use of the term "houses" would make little sense if the claimed compartment could be unenclosed. Moreover, if the compartments were not fully enclosed when inserted into the work platform, the very purpose of the compartments—securely holding medication for specific patients—would be undermined. *See id.* at col.7 ll.33–36 ("The plurality of compartments 530 enable a user (e.g., a nurse) to separately maintain medication for particular patients or for a particular room."). Indeed, allowing for unenclosed compartments would open the door to any number of mistakes—such as dropping one patient's medication into the bin of another, or dropping a foreign substance into a patient's medication—which would cut directly against one of the primary advantages of the claimed invention: reducing provider error. *See OSRAM GmbH v. ITC*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (reversing construction that was "at odds with the purposes of the invention").

Finally, and critically, the '650 Patent expressly distinguishes the claimed "compartment for containing an item within the compartment" from a variety of unenclosed storage spaces— namely, a "barcode scanner holder", "top bins", "side bins", and "cup holders." *Id.* at col.4 ll.30–34 ("The work platform 340 can include . . . an adjustable barcode scanner holder 380, an adjustable clipboard 390, one or more lockable compartments 530, a plurality of top bins 342, removable side bins 520, cup holders 344 . . . ."). The '650 Patent uses terms other than "compartment" to refer to these different open storage spaces, and these open storage spaces serve different functions than the claimed compartment. *Id.* at col.8 ll.6–11 ("The top bins 243 are provided to house items such as paperclips, pencils, etc. Similarly, the cup holders 344 are

13

provided to secure a number of medicine cups used to pass out medications. The removable side bins 520 can be provided to hold items, such as trash or medical equipment.") If the Court were to construe the term "compartment for containing an item within the compartment" generically, as Ergotron proposes, that generic construction would improperly encompass each of these different structures.

Indeed, the '650 Patent explicitly states that Figure 7, which contains the removable side bin 520, is "a perspective view of a work platform of the medical cart of FIG. 1 *without compartments*," *id.* at col.3 ll.33–34 (emphasis added), Fig. 7 (shown above with side bin 520 highlighted in red); *see also* Fig. 1 (showing side bin 520); *id.* at col.4 l.34 (identifying the removable side bins as component 520 in Fig. 1). In so doing, Figure 7 and the accompanying text make clear that the removable side bin 520 for holding items such as trash or medical equipment is <u>not</u> a claimed "compartment." Any construction that would qualify the side bin 520 as a "compartment" would directly contradict the specification, and improperly import the unclaimed bin into the scope of the '650 Patent claims. Where, as here, the specification distinguishes between two components and claims only one, the Federal Circuit mandates that the claimed component cannot be construed to include the unclaimed component. *See, e.g.*, *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1379 (Fed. Cir. 2009) (holding that the claimed "tube" could not be construed to include "spikes" because the different term "spikes" appeared in the specification and not in the patent claims); *Masco Corp. v. United States*, 303 F.3d 1316, 1328 (Fed. Cir. 2002) (refusing to construe the term "dial" to cover knobs, because "the specification . . . distinguishes between the dial and the knob").

As these cases dictate, "compartment for containing an item within the compartment" cannot be given any construction that would include open storage spaces like the side bins and

14

top bins described in the specification.  Instead, this term and its variants must be construed to exclude these different types of storage space and to require enclosure when the container is inserted into the work platform of which it forms a part.

   3. *"Driver" and "Driver Configured to Releasably Position the Work Platform" Should Be Construed as "**the Mechanical Part or Parts of the Height Adjustment Mechanism That are Controlled by the Actuator and That Releasably Position the Work Platform**."*

Rubbermaid's construction of the disputed terms "driver" and "driver configured to releasably position the work platform" comes directly from the claims of the '650 Patent, the specification, and the accepted mechanical meaning of "driver" in the art.

Asserted claim 1 itself states that the driver is a part of the claimed medical cart's height adjustment mechanism,[5] and that the driver releasably positions the work platform: "a height adjustment mechanism for adjusting a height of the work platform relative to the base . . . , the *height adjustment mechanism comprising*: *a driver configured to releasably position the work platform . . . .*" '650 Patent col.14 ll.28–34 (emphasis added).  Then, in reciting that the height adjustment mechanism also requires "an actuator for controlling the driver," claim 1 explicitly provides that the driver is the part or parts of the height adjustment mechanism that are controlled by the actuator.  *Id.* at col.14 l.35.  The specification reinforces these same points. *See, e.g.*, *id.* at col.8 ll.29–30 ("The height adjustment mechanism 400 includes . . . a driver 430."); *id.* at col.9 ll.1–16 (explaining how the driver releasably positions the work platform); *id.* at col.8 l.55 ("The driver 430 is controlled by an actuator 440 . . . .").  In addition, the specification visually depicts a driver 430 in the embodiment of Figure 9A, which the inventors

---

[5] Rubbermaid addresses the plain and ordinary meaning construction of "height adjustment mechanism" in Section III.B.2 below.

described as "parts of a height adjustment mechanism of the medical cart of FIG. 1." *Id.* at col.3 ll.38–39.

The patentee's use of the term "driver" in asserted claim 1 and the '650 Patent specification is also consistent with the ordinary definition of that term at the time of the invention. *Random House Webster's Unabridged Dictionary* defines "driver" as "5. *Mach.* a. a part that transmits force or motion." Ex. C at 598. *Merriam-Webster's Collegiate Dictionary* similarly defines "driver" as "d: a mechanical piece for imparting motion to another piece." Ex. B at 382.

Rubbermaid's proposed construction—"the mechanical part or parts of the height adjustment mechanism that are controlled by the actuator and that releasably position the work platform"—covers exactly the requirements outlined in the claims and specification, and, like the claims and specification, is consistent with extrinsic evidence from the time of invention.

    4.   *"Plurality of Heights" Should Be Construed as "**a Lowest Position, a Highest Position, and a Position Between Them.**"*

Claim 1 requires "a height adjustment mechanism for adjusting a height of the work platform relative to the base, wherein the height adjustment mechanism is configured to releasably position the work platform at a plurality of heights." '650 Patent col.14 ll.28–31. In dispute is how the term "plurality of heights" should be construed in this specific context.

Ordinarily, the term "plurality" by itself means "'more than one.'" *Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1332 (Fed. Cir. 2003) (citation omitted). But here, claim 1 does not use plurality in isolation. Rather, claim 1 requires that the work platform be capable of being positioned at a plurality of heights "*relative to the base*." '650 Patent col.14 l.29. Because of this reference to the base, the plain language of the claim when properly construed requires at least three heights—a height at the base, a highest position, and at least one position between

them.  To construe "plurality of heights" as requiring any less would read the claim term "relative to the base" out of the claims, contrary to the mandate of the Federal Circuit.  *See, e.g.*, *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 951 (Fed. Cir. 2006) (rejecting proposed construction that would read limitations out of the claim because "claim language should not treated as meaningless"); *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1562 (Fed. Cir. 1991) ("All the limitations of a claim must be considered meaningful.").

The specification confirms that at least three heights are required.  The specification explains that "the work platform 340 will be releaseably locked at the height at which the button 444 is released.  As a result, the work platform 340 can be releaseably locked at *any position between* a lowest position (at which the telescoping strut 434 is maximally provided in the body portion 436 of the piston 432) and a highest position."  '650 Patent col.9 ll.14–20 (emphasis added); *see also id.* at col.9 ll.32–35 ("[W]hen the work platform 340 is raised it may be releaseably locked at any position between the lowest position and the height position by releasing the button 444.").  Accordingly, "plurality of heights" should be construed as "a lowest position, a highest position, and a position between them."

5. *"Laptop Platform" Should Be Construed as "**a Movable Portion of the Work Platform Suitable for Supporting a Laptop**."*

Claim 15 claims "[t]he cart of claim 9, wherein the movable platform is a laptop platform."  '650 Patent col.16 ll.1–2.  The claims and specification of the '650 Patent demonstrate that "laptop platform" should be construed as "a movable portion of the work platform suitable for supporting a laptop."

The claim language requires that the laptop platform of claim 15 be a movable portion of the work platform.  Claim 15 depends from claim 9, which states that the "movable platform" is a portion of the work platform.  *Id.* at col.15 l.15 ("a work platform including a movable

platform"). It is well-settled that a dependent claim incorporates all of the limitations of the claim to which it refers. *Alcon Research, LTD v. Apotex Inc.*, 687 F.3d 1362, 1367 (Fed. Cir. 2012). Accordingly, the plain language of the claim requires that the "movable platform" of claim 15 be a movable portion of the work platform.

The claim language and specification further require that the movable portion of the work platform be suited to hold a laptop. Claim 1 explicitly labels this structure as a "laptop" platform, and the specification explains that this means that "[t]he laptop platform 370 can be configured to support, for example, a laptop computer 900 (shown in FIGS. 6A and 7)." *Id.* at col.4 ll.38–39. This "configured to" language indicates that the laptop platform must be suited to hold a laptop computer, but need not support a laptop computer at all times. *See Paragon Solutions, LLC v. Timex Corp.*, 566 F.3d 1075, 1088 (Fed. Cir. 2009) (distinguishing between a display unit "displaying real-time data" and one "configured for displaying real-time data"). Rubbermaid's proposed construction accords with this distinction.

## B. The Remaining Disputed Terms Should Be Given Their Plain and Ordinary Meaning.

All of the remaining disputed claim terms have plain and ordinary meanings and therefore do not require additional construction by the Court. As the Federal Circuit explained in *Phillips*, where the ordinary meaning of a term is readily apparent, elaborate interpretation is not required. 415 F.3d at 1314. Rather, construction "involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* The fact that the parties disagree over the meaning of a term does not make a plain meaning construction any less appropriate. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012) (holding that "[t]he district court did not err in concluding that these terms have plain meanings

that do not require additional construction" where ActiveVideo proposed a construction that "erroneously read[] limitations into the claims").

Neither the text of the '650 Patent nor its prosecution history suggests any special construction of the terms "work surface"; "actuator for controlling the driver"; "wherein the work surface is movable"; "wherein the work surface can be moved"; "movable platform"; "height adjustment mechanism"; "height adjustment mechanism for adjusting a height of the work platform relative to the base"; "at least one compartment"; "the at least one compartment"; or "disposed above a top of the at least one compartment." Accordingly, these terms should be construed to have their plain and ordinary meanings, with no further construction necessary.

Despite these well-established principles of claim construction, Ergotron seeks to redefine these terms in three ways. First, Ergotron attempts to limit the terms "work surface"; "actuator for controlling the driver"; "wherein the work surface is movable"; "wherein the work surface can be moved"; and "movable platform" to particular embodiments described in the '650 Patent specification. Second, Ergotron seeks to limit "height adjustment mechanism for adjusting a height of the work platform relative to the base" to a means-plus-function construction. Third, with respect to the terms "at least one compartment"; "the at least one compartment"; and "disposed above a top of the at least one compartment," Ergotron incongruously suggests that "the at least one" should somehow be construed as "all." The Federal Circuit has squarely rejected all three arguments.

1. *"Work Surface"; "Actuator for Controlling the Driver"; "Wherein the Work Surface is Movable"; "Wherein the Work Surface Can Be Moved"; and "Movable Platform"*

Nothing in the claims or specification of the '650 Patent limits the meaning of the terms "work surface"; "actuator for controlling the driver"; "wherein the work surface is movable"; "wherein the work surface can be moved"; and "movable platform." The Federal Circuit has

19

emphasized that "an accused infringer cannot overcome the 'heavy presumption' that a claim term takes on its ordinary meaning simply by pointing to the preferred embodiment or other structures or steps disclosed in the specification or prosecution history." *Teleflex*, 299 F.3d at 1327; *see also, e.g.*, *Nazomi Commc'ns, Inc.*, 403 F.3d at 1369. Thus, this Court has declined to import limitations from the specification into the claim language where the patentee "did not set forth a precise, consistent definition . . . in the specification." *Wyeth*, 570 F. Supp. 2d at 826.

Ergotron's proposed constructions violate this well-established principle and should be rejected. Because the patentee did not limit these disputed terms to preferred embodiments, they should be given their plain and ordinary meanings.

> 2. *"Height Adjustment Mechanism" and "Height Adjustment Mechanism for Adjusting a Height of the Work Platform Relative to the Base"*

Other than the term "work platform," which must be construed as "a height adjustable set of components configured to be raised and lowered together" for the reasons explained above in Section III.A.1, "height adjustment mechanism" and the other terms in the phrase "height adjustment mechanism for adjusting a height of the work platform relative to the base" have plain and ordinary meanings in the art which are not altered by the '650 Patent. Accordingly, these terms do not require construction. *See ActiveVideo Networks, Inc.*, 694 F.3d at 1326 (affirming district court's plain meaning construction because the terms had "plain meanings that d[id] not require additional construction").

With respect to claim 1 and its dependents, Ergotron agrees that no construction is required. As to claim 9 and its dependents, however, Ergotron inconsistently asserts that "height adjustment mechanism for adjusting a height of the work platform relative to the base" should be

construed as a means-plus-function term under 35 U.S.C. § 112 ¶ 6.[6]  This proposal is directly

contrary to Federal Circuit precedent, of which Ergotron is aware.

In *Flo Healthcare Solutions, LLC v. Kappos*—a recent case involving one of Ergotron's

own mobile workstations—the Federal Circuit rejected the very same § 112 ¶ 6 construction that

Ergotron now asks this Court to adopt.  697 F.3d 1367, 1372 (Fed. Cir. 2012).  The mobile

workstation patent in *Flo Healthcare* claimed "a height adjustment mechanism for altering the

height of the horizontal tray."  *Id.*  In no uncertain terms, the Federal Circuit held that the Board

of Patent Appeals and Interferences erred in subjecting "height adjustment mechanism" to a §

112 ¶ 6 means-plus-function construction:

> Our cases make clear . . . that the presumption flowing from the absence of the
> term "means" is a strong one that is not readily overcome.  When the claim drafter
> has not signaled his intent to invoke § 112, ¶ 6 by using the term "means," we are
> unwilling to apply that provision without a showing that the limitation essentially
> is devoid of anything that can be construed as structure.  Thus, we will not apply §
> 112, ¶ 6 if the limitation contains a term that is used in common parlance or by
> persons of skill in the pertinent art to designate structure.

*Id.* at 1374 (internal quotations and citations omitted).

Against this backdrop, and citing the same extrinsic evidence that Rubbermaid points to

here, the Federal Circuit recognized that the term "adjustment" has "a reasonably well-

understood meaning as a name for a structure."  *Id.*  The combination of the structural term

"adjustment" with the term "mechanism" imparts "sufficient structure to avoid a § 112 ¶ 6

construction."  *Id.*  Further bolstering this conclusion, the court noted that, as used in the patent

---

[6] In the alternative, Ergotron argues that, if the Court determines that § 112 ¶ 6 does not apply,
this term should be construed as "a gas driven piston and button that controls gas flow of the gas
driven piston."  (*See* Joint Claim Construction and Prehearing Statement, Dkt. No. 34, at 3.)
This is simply another example of limiting the claim to a preferred embodiment, contrary to
Federal Circuit precedent.  *Phillips*, 415 F.3d at 1323; *see also, e.g.*, *Wyeth*, 570 F. Supp. 2d at
826 (holding that limitations should not be imported from the specification into the claim
language).

at issue in *Flo Healthcare*, the term "height adjustment mechanism" designated "a class of structures that are generally understood to persons of skill in the art." *Id.*

On the means-plus-function issue, *Flo Healthcare* is dispositive here. The term "means" does not appear in claim 9 of the '650 Patent, and the phrase "height adjustment" gives sufficient structure to the term "mechanism" to preclude means-plus-function treatment. In addition, the '650 Patent specification reinforces that the "height adjustment mechanism" is a structural element—one that is itself comprised of mechanical "parts" for adjusting the height of the work platform. *See, e.g.*, '650 Patent col.3 ll.38–39 (explaining that Fig. 9A depicts "parts of a height adjustment mechanism of the medical cart of FIG. 1"); Fig. 9A; *see also id.* at col.14 ll.10–14 (stating that "other medication modules, medical carts, *height adjustment mechanisms*, keyless entry systems, and methods of medication transport are fully within the scope of the claimed invention") (emphasis added).

Accordingly, the Court should give "height adjustment mechanism" and "height adjustment mechanism for adjusting a height of the work platform relative to the base" their plain and ordinary meanings, subject to the construction of "work platform" required by the '650 Patent and proposed by Rubbermaid.

3. *"At Least One Compartment"; "The at Least One Compartment"; and "Disposed Above a Top of the at Least One Compartment"*

Other than the construction of "compartment" discussed above, the terms "at least one compartment," "the at least one compartment," and "disposed above a top of the at least one compartment" likewise have plain and ordinary meanings that do not warrant further construction. Despite these plain meanings, and for the purpose of manufacturing a potential non-infringement position, Ergotron contends that "the at least one compartment" should be construed as "all of the one or more compartments." In so doing, Ergotron apparently seeks to

22

obtain a construction requiring that the work surface of claim 1 and the movable platform and work surface of claim 9 be located above *all* compartments, and not simply located above the one compartment required by the claims.

The '650 Patent never suggests that "the at least one" should be construed as "all." To the contrary, the claims recite that the work platform has "at least one compartment," *see* col.14 ll.22–24; *id.* at col.15 ll.15–19, clearly indicating that only one compartment is necessary. The claims then require that the work surface (and, in the case of claim 9, the movable platform) be "disposed above a top of the at least one compartment." *Id.* at col.14 ll.24–25; *id.* at col.15 ll.18–19. These subsequent, consistent references to "*the* at least *one* compartment" refer back to the one required compartment. *See* col.14 ll.22–25 (emphasis added); *id.* at col.15 ll.15–19. And of course, the claims would not require that the work surface be disposed above "*a top* of the at least one compartment," *id.* at col.14 ll.24–25 (emphasis added); *id.* at col.15 ll.18–19 (same), if they in fact required the work surface to be above *the top* of *all* compartments.

Thus, claims 1 and 9 themselves unequivocally establish that only one compartment is required, and only that one requisite compartment must be situated below the work surface. Any additional, non-requisite compartments that a given cart might contain are not encumbered by the additional spatial limitations of these claims.[7]

Following this plain meaning approach, the Federal Circuit rejected the same argument that Ergotron makes here in *Howmedica Osteonics Corp. v. Wright Medical Technology, Inc.*, 540 F.3d 1337 (Fed. Cir. 2008). The claim in *Howmedica* recited a knee prosthesis with a

_____

[7] This fact is reinforced by dependent claim 14, which recites: "The cart of claim 9, wherein the at least one compartment comprises a plurality of compartments." '650 Patent col.15 ll.59–60. Here, in direct contrast to claims 1 and 9, the inventors did impose a requirement that the work platform have multiple compartments and that multiple compartments meet the claimed spatial limitations.

"femoral component including at least one condylar element" and further required that "the condylar element" meet certain geometric requirements:

> "In a knee prosthesis . . . , the knee prosthesis having a femoral component . . . the femoral component including *at least one condylar element* for confronting and engaging the bearing member . . . the engagement between *the condylar element* of the femoral component and the bearing member of the tibial component ordinarily taking place at a contact area along articular surface areas of *the condylar element* and the bearing member, the improvement comprising:
>
> anterior-posterior surface profile contours along *the condylar element* and the bearing member, the anterior-posterior surface profile contour along *the condylar element* having an essentially constant anterior-posterior articular radius throughout the articular surface area of *the condylar element* which contacts the bearing member . . . ."

*Id.* at 1340 (emphasis added). The parties agreed that, as used in the claims, "'the condylar element' is shorthand for 'the [at least one] condylar element,'" *id.* at 1352 (alteration in original). It was also undisputed that the accused prosthesis contained two condylar elements.

Accordingly, as is the case here, the parties' dispute in *Howmedica* was whether the "the [at least one] condylar" language meant that *both* condylar elements were required to meet the geometric requirements of the claim, or whether the claim simply required that one condylar element meet the geometric requirements. The Federal Circuit held that the proper construction of "the [at least one] condylar" was one condylar element, not "all" of them:

> If the patentee had intended both condyles in a bicondylar prosthesis to meet these limitations, he could have drafted claim 15 to require that "both condylar elements" do so. The more natural way of drafting the claim language to achieve that result would be to require "*each* condylar element," rather than "*the* condylar element," to conform to the . . . geometry. . . .
>
> [T]he plain language of claim 15 makes clear that, whether a prosthesis is unicondylar or bicondylar, only one condylar element meeting the geometric limitations of the claim is required to bring that prosthesis within the scope of the claim.

*Id.* at 1344 & 1347.

24

This case is the same. If the inventors had intended to require that the movable platform and work surface be located above *all* compartments, the claim would say so. However, that is not what the inventors wrote, nor did they suggest that interpretation at any point in the specification or prosecution history. Thus, for the same reasons explained in *Howmedica*, this Court should reject Ergotron's assertion that "the at least one" means "all," and should instead give "at least one compartment," "the at least one compartment," and "disposed above a top of the at least one compartment" their plain and ordinary meanings.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court should adopt the '650 Patent claim constructions proposed by Rubbermaid.

Dated: May 10, 2013

       *s/ Derek H. Swanson*
David E. Finkelson (admitted *pro hac vice*)
Derek H. Swanson (admitted *pro hac vice*)
MCGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, VA 23219
Tel: 804.775.1081
Fax: 804.698.2258
*dfinkelson@mcguirewoods.com*
*dswanson@mcguirewoods.com*

Robert A. Muckenfuss (N.C. Bar No. 28218)
R. Matthew Pearson (N.C. Bar No. 35494)
MCGUIREWOODS LLP
201 North Tryon St.
Charlotte, NC 28202
Tel: 704.343.2090
Fax: 704.373.8935
*rmuckenfuss@mcguirewoods.com*
*mpearson@mcguirewoods.com*

*Counsel for Plaintiff Rubbermaid Incorporated d/b/a Rubbermaid Medical Solutions*

# CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2013, a copy of the foregoing was filed electronically using the Court's CM/ECF System, which will send a notification of such filing to the following counsel of record:

Kurt John Niederluecke
Grant D. Fairbairn
Laura Myers
Fredrikson & Bryon, P.A.
200 South Sixth St.
Suite 4000
Minneapolis, MN 55402
Tel: 612.492.7000
Fax: 612.492.7700
*kniederluecke@fredlaw.com*
*gfairbairn@fredlaw.com*
*lmyers@fredlaw.com*

Lawrence C. Moore , III
Nathan C. Chase, Jr.
Robinson, Bradshaw & Hinson, P. A.
101 N. Tryon St.
Suite 190
Charlotte, NC 28246
Tel: 704.377.8303
Fax: 704.373.3903
*lmoore@rbh.com*
*nchase@rbh.com*

*s/ Derek H. Swanson*
Derek H. Swanson (admitted *pro hac vice*)
MCGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, VA 23219
Tel: 804.775.1081
Fax: 804.698.2258
*dswanson@mcguirewoods.com*

*Counsel for Plaintiff Rubbermaid Incorporated d/b/a Rubbermaid Medical Solutions*

26