UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-416-RJC-DSC

| | |
|---|---|
| RUBBERMAID INCORPORATED ) | |
| d/b/a RUBBERMAID MEDICAL ) | |
| SOLUTIONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| ) | |
| ERGOTRON, INC., ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on the parties' respective briefs (Doc. Nos. 34-37; 40) for construction of certain claim language used in U.S. Patent No. 8,215,650 (the 650 patent). The Court held a claim construction hearing on July 23, 2013.

**I.     PRINCIPLES OF CLAIM CONSTRUCTION**

The determination of infringement is a two-step process in which the Court first construes the claims to determine the scope of the claims and then compares the properly construed claims to the accused device. Bell Atlantic Network Servs., Inc. v. Covad Communications Group, Inc., 262 F.3d 1258, 1267 (Fed. Cir. 2001). The first step in this process, the construction of claims, is a question of law for the court. Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996); Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). The second step, in contrast, is typically a question of fact for the jury. See Bell Atlantic, 262 F.3d at 1267.

"It is well settled that, in interpreting an asserted claim, the court should look first to the

intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history. . . . Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citation omitted). The court should give the disputed claim terms "their ordinary and accustomed meaning as understood by one of ordinary skill in the art." Bell Atlantic, 262 F.3d at 1267. A person of ordinary skill in the art is deemed to read the claim terms in the context of the entire patent, including the specification and the prosecution history. See Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005).

The claims of the patent "provide substantial guidance as to the meaning of particular claim terms." Id. at 1314. Specifically, the context in which a term is used within an individual claim or across several claims can be instructive in ascertaining the meaning of a particular claim term. Finally, courts also "must look at the ordinary meaning in the context of the written description and the prosecution history." Medrad, Inc. v. MRI Devices Corp., 401 F.3d 1313, 1319 (Fed. Cir. 2005) (citation omitted).

The specification of the patent "is always highly relevant to the claim construction analysis." Vitronics, 90 F.3d at 1582. In fact, the specification is usually dispositive, as "it is the single best guide to the meaning of a disputed term." Id. The Federal Circuit has stated that it is "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." Phillips, 415 F.3d at 1317. The lexicography of the inventor governs in cases where the inventor provides within the specification a special definition of a claim term that differs from the term's customary meaning. Id. at 1316. The inventor may also disclaim or disavow claim scope within the specification.

2

Where "the inventor has dictated the correct claim scope, . . . the inventor's intention, as expressed in the specification, is regarded as dispositive." Id.

In addition to the specification, courts may also examine the patent's prosecution history to determine the terms of the claims. Markman v. Westview Instruments, Inc., 52 F.3d 967, 980 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996). "Like the specification, the prosecution history provides evidence of how the [Patent and Trademark Office] and the inventor understood the patent." Phillips, 415 F.3d at 1317. The prosecution history can be instructive in determining whether the inventor disclaimed any particular interpretation during the prosecution of the patent. See Chimie v. PPG Indus., Inc., 402 F.3d 1371, 1384 (Fed. Cir. 2005). However, courts should approach the prosecution history with a measure of caution as it often "lacks the clarity of the specification and thus is less useful for claim construction purposes." Phillips, 415 F.3d at 1317.

Courts are also authorized to consider certain extrinsic evidence including testimony from the inventor or from experts, dictionaries, and learned treatises. Markman, 52 F.3d at 980. While extrinsic evidence may "shed useful light on the relevant art," it is "less significant than the intrinsic record in determining the legally operative meaning of disputed claim language." C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 862 (Fed. Cir. 2004) (internal quotation omitted). "In sum, extrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." Phillips, 415 F.3d at 1319.

Finally, for all of the claims, the Court construes the term "consisting of" as limiting language in opposition to the term "comprising" which means "including, but not limited to" the

3

steps following in the patent. "The transitional term 'comprising' . . . is inclusive or open-ended and does not exclude additional, unrecited elements or method steps." Georgia-Pacific Corp. v. Gypsum Co., 195 F.3d 1322, 1327-28 (Fed. Cir. 1999) (internal reference omitted). "In simple terms, a drafter uses the phrase 'consisting of' to mean 'I claim what follows and nothing else.' A drafter uses the term 'comprising' to mean 'I claim at least what follows and potentially more.'" Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc., 212 F.3d 1377, 1383 (Fed. Cir. 2000).

## II. CONSTRUCTION OF TERMS

### A. Undisputed Terms

The parties have agreed to construe the term "slot" according to its plain and ordinary meaning and the Court will so construe the term.

### B. Disputed Claims

The asserted claims of the 650 Patent are claims 1,5,6,9, and 12-15. Claims 1 and 9 are independent claims, while the remaining claims depend on terms from claims 1 or 9. The Court addresses each disputed term individually.

#### 1. "Work Platform"

The claim language describes "a work platform including a work surface and at least one compartment for containing an item within the compartment, wherein the work surface is disposed above a top of the at least one compartment." (650 Patent, Col. 14 ll. 21-25). Rubbermaid proposes that the term should be construed as "a height adjustable set of components configured to be raised and lowered together." As support for this proposition, Rubbermaid argues that the specification consistently emphasizes that the components must be configured to be raised and lowered together. Specifically, Rubbermaid cites to the following

4

language from the specification which states that: "The plurality of compartments 530 face the user and move up and down with the work platform 340 (i.e. They remain in the same position relative to the laptop platform 370), which are ergonomically desirable features." (Id. at Col. 7 ll. 28-31). Defendant Ergotron, in contrast, argues that because independent claims 1 and 9 identify the function of a work platform, there is no reason to construe the term which should be given its plain and ordinary meaning.

Rubbermaid's argument is persuasive here, and the Court construes the term "work platform" to mean "a height adjustable set of components configured to be raised and lowered together."

    2. <u>"Compartment"</u>

Rubbermaid proposes construing the term "compartment" as "a drawer or other type of container that is enclosed when inserted into the work platform of which it forms a part." In support for this proposition, Rubbermaid argues that the specification distinguishes enclosed containers from unenclosed storage spaces such as bins and cup holders. Accordingly, Rubbermaid argues that where, as here, the specification distinguishes between two components and claims only one, the Federal Circuit mandates that the claimed component cannot be construed to include the unclaimed component. <u>Masco Corp. v. United States</u>, 303 F.3d 1316, 1328 (Fed. Cir. 2002). Ergotron, in contrast, argues that the term does not require construction as the plain and ordinary meaning of the term would be readily understood by the finder of fact.

The Court finds Rubbermaid more persuasive on this point. The specification consistently defines the compartment as serving the function of "containing an item within the compartment." (650 Patent at Col. 14 ll. 23-24). The claim consistently identifies the functions

5

of the compartment as distinct from an unenclosed space. The Court therefore construes the term "compartment" as: "a drawer or other type of container that is enclosed when inserted into the work platform of which it forms a part."

        3.    <u>"Driver"</u>

The claim language identifies the terms "driver," and "driver configured to releasably position the work platform." Rubbermaid proposes the following construction: "the mechanical part or parts of the height adjustment mechanism that are controlled by the actuator and that releasably position the work platform." As support, Rubbermaid cites to the claim language which states that the driver is part of the height adjustment mechanism and serves the function to "releasably position[] the work platform." (Doc. No. 35 at 15) ("a height adjustment mechanism for adjusting a height of the work platform relative to the base . . . , the height adjustment mechanism comprising: a driver configured to releasably position the work platform . . .." (650 Patent, Col. 14 ll. 28-34)). Rubbermaid contends that, like the height adjustment mechanism of which it is a part, the driver claimed in independent claim 1 is not confined to just one structure. (Doc. No. 37 at 23). Instead, the term should be construed by reference to the 650 Patent claims related to the height adjustment functions and the positioning of the work platform. (<u>Id.</u> at 23-24).

Ergotron, in contrast, proposes "gas driven piston" and notes that the specification defines the term this way. (650 Patent at Col. 8, ll. 52-53) ("The driver 430 includes a gas driven piston 432, which, in turn, includes a body portion 436 and a telescoping strut 434). Ergotron argues that Rubbermaid has, through various patent filings, had ample opportunity to disclose additional embodiments configured to releasably position the work platform, but has chosen to

disclose only a single embodiment of driver. (Doc. 36 at 17). Ergotron argues that the use of extrinsic evidence would be improper where a construction is mandated by the intrinsic evidence. Elkay Mfg. Co. v. Ebco Mfg. Co., 192 F.3d 973, 977 (Fed. Cir. 1999) (stating that a "court may not use extrinsic evidence to arrive at a claim construction that is clearly at odds with the construction mandated by the intrinsic evidence.").

Here, the Court finds Ergotron persuasive and will construe the terms "driver" and "driver configured to releasably position the work platform" to mean a "gas driven piston."

    4.    "Plurality of Heights"

Rubbermaid proposes that the term "plurality of heights" be construed to mean "a lowest position, a highest position, and a position between them." Rubbermaid argues that the term should reflect "the heights at which the height adjustment mechanism releasably positions the work platform relative to the base" and therefore requires at least three heights—a base position, a highest position, and at least one position between them. (Doc. No. 37 at 22-23). Such position, contemplates a lowest position from which height adjustment is measured. The "plurality of heights" referenced in claim 1 is properly read to mean a plurality of heights from that lowest position. (Id. at 23).

Ergotron argues that the plain and ordinary meaning of "plurality" is "two or more." By arguing for three or more heights, Ergotron contends that Rubbermaid seeks conflicting goals: to distinguish its patent from prior art, and to retain viable claims for infringement.

Considering these arguments, the Court construes the term "plurality of heights" to mean "at least three heights."

    5.    Laptop Platform

Rubbermaid proposes that "laptop platform" should be construed as "a moveable portion of the work surface suitable for supporting a laptop." In support, Rubbermaid notes that claim 15 depends on claim 9 which states that the "moveable platform" is a portion of the work platform. (650 Patent at Col. 15 l.15). In addition, claim 1 explicitly labels this structure as a "laptop platform" and explains that "[t]he laptop platform 370 can be configured to support, for example, a laptop computer 900 . . . ." (Id. at Col. 4 ll.38-39). Finally, Rubbermaid cites to Paragon Solutions, LLC v. Timex Corporation to support the proposition that configuring an object to perform a function does not itself mandate that it perform such function. 566 F.3d 1075, 1087 (Fed. Cir. 2009).

Ergotron proposes "laptop platform" to mean "moveable top surface of the cart that holds a laptop computer." As support, Ergotron points out that the "laptop platform" and "moveable platform" are the same structure with the only distinction being their intended use. Accordingly, it follows that for claim 15 to have a separate meaning from claim 9, "laptop platform" must be construed to require its intended use of holding a laptop computer. Ergotron posits that the only plausible distinction between the movable platform and the laptop platform is that the latter actually holds a laptop computer.

The Court finds Ergotron's argument persuasive and construes "laptop platform" to mean "moveable top surface of the cart that holds a laptop."

      6.      Work Surface

Rubbermaid argues that the term "work surface" should be construed according to its plain and ordinary meaning as to do otherwise would effectively import limitations from the specification into the claim language where the patentee did not set forth a precise definition in

the specification. Rubbermaid argues that Ergotron's proposed construction violates established principles of claim construction and cites to Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1327 (Fed. Cir. 2002) for support that "an accused infringer cannot overcome the 'heavy presumption' that a claim term takes on its ordinary meaning simply by pointing to the preferred embodiment or other structures or steps disclosed in the specification or prosecution history." Rubbermaid contends that the claim language addresses location in requiring the work surface to be located on the work platform. (Doc. No. 37 at 8).

Additionally, Rubbermaid contends that the independent claims of the 650 Patent do not require that the work surface "curve," and to read such limitation into the claims violates the principles of claim differentiation and the Federal Circuit's mandate against using a preferred embodiment to limit the proper scope. (Doc. No. 37 at 11). See, Versa Corp. v. Ag-Bag Int'l Ltd., 392 F.3d 1325, 1330 (Fed. Cir. 2004) ("The doctrine of claim differentiation 'create[s] a presumption that each claim in a patent has a different scope.'"). Rubbermaid contends that it claimed a work surface embodiment only in the dependent claims but not in the independent claims. (Doc. No. 37 at 11-12).

Finally, Rubbermaid maintains that Ergotron's proposed construction that the work surface serve the purpose of "dispensing medication and holding work papers" is not found in the claims, but is an attempt to import limiting language from the specifications in a manner not consistent with such specifications. (Doc. No. 37 at 16).

Ergotron, in contrast, exhorts the Court to construe the term "work surface" as the "curved surface near the top of the cart for dispensing medication and holding work papers." As support, Ergotron calls attention to the fact that Rubbermaid distinguished its invention from

9

prior art on the basis that its work surface was located near the top of the cart. (Doc. No. 36-3: Office Action Summary). In subsequent communications with the Examiner, Rubbermaid proposed amendments to the independent claims, including clarifying that the work surface "is disposed above a top of the at least one compartment." (Doc. No. 36-4: Interview Summary). Rubbermaid later confirmed that "[t]he statements made in the Interview Summary are correct" and amended its claims accordingly. (Doc. No. 36-5 at 7). Ergotron argues that the prosecution history demonstrates a clear intention by the inventor to make the claim scope narrower than it would otherwise be. Phillips v. AWH Corp., 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc).

Ergotron also argues that Rubbermaid acted as its own lexicographer and defined its work surface as "being arcuate in shape" in the specification and did not discuss or show a work surface with any other shape in the patent. (Doc. No. 40 at 4) (citing 650 Patent Col. 6, ll.14-20). Consequently, a person of ordinary skill in the art would understand Rubbermaid's invention to require a curved work surface. (Id. at 5) (citing Bell Atlantic Network Svcs., Inc. v. Covad Comm'ns Group, Inc., 262 F.3d 1258, 1271 (Fed. Cir. 2001) ("[W]hen a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication.'") (citations omitted)). Ergotron contends that claim differentiation is not at issue here as Claims 7 and 10 discuss the movement of the work surface, not its shape. (Doc. No. 40 at 5).

Finally, Ergotron maintains that by removing any reference to a particular function, Rubbermaid attempts to remove the term "work" from "work surface" and thereby broaden the term to include any surface. (Id. at 8). Ergotron contends that Rubbermaid effectively distinguished its work surface from prior art by noting the expanded work space. Such critique,

Ergotron contends, amounts to a disavowal of all claims to a space smaller than that which is capable of performing the tasks cited. (Id. at 9) (citing Edwards Lifesciences LLC v. Cook Inc., 582 F.3d 1322, 1333 (Fed. Cir. 2009)) ("Where the general summary or description of the invention describes a feature of the invention . . . and criticizes other products . . . that lack that same feature, this operates as a clear disavowal of these other products . . . .").

The Court construes the term "work surface" to mean "curved surface near the top of the cart that is large enough to dispense medication or hold work papers."

### 7. Wherein the Work Surface is Movable

As discussed supra, Rubbermaid contends that nothing in the claims or specification limit the meaning of the term "wherein the work surface is movable" and therefore the Court should adopt the plain and ordinary meaning. Ergotron, in contrast, points out that Rubbermaid explained in the specification that the work surface "slides in an arcuate path" which results in its being "positioned closer to a user standing or sitting in front of the medical cart . . . ." (650 Patent, Col. 6, ll. 14-20). Additionally, every relevant patent figure shows the work surface moving along a curved path toward the user. (Id. at Col. 5, ll. 52-53).

The Court finds Ergotron's explanation more persuasive and construes the term as "a curved surface near the top of the cart that is large enough to dispense medication or hold work papers is movable along a curved path toward the user."

### 8. Actuator For Controlling The Driver

Rubbermaid proposes that the term "actuator for controlling the driver" be assigned its plain and ordinary meaning. It contends that Ergotron's proposal, specifically that it must be a "button," and that "it controls the gas flow of the gas driven piston," imports limitations from the

specification into the claim language where the patentee did not set forth a precise definition in the specification.

Ergotron proposes that it be construed as the "button that controls gas flow of the gas driven piston." As support, Ergotron cites to the specification which states that "[t]he driver 430 is controlled by an actuator 440 . . . ," (Id. at Col. 8, ll.54-55), and that the actuator is a button that the user pushes as it raises or lowers the work platform to allow gas to flow through the gas driven piston. (Id. at Col. 9, ll.2-35).

The Court finds Ergotron's explanation persuasive and construes the term "actuator for controlling the driver" as "button that controls gas flow of the gas driven piston."

9.   Movable Platform

Rubbermaid proposes that the term "movable platform" should be given its plain and ordinary meaning and that the court should not impose any limitations. Rubbermaid further contends that the proposed amendments during prosecution inserting claim language that the work surface and moveable platform be above a top of "the at least one compartment" cannot fairly be read to impose a distinct requirement that the movable platform serve as the top surface of the cart. (Doc. No. 37 at 17). Ergotron proposes that the term mean "movable top surface of the cart." Ergotron draws attention to the prosecution history and the figures to posit that Rubbermaid, in an attempt to overcome prior art, limited the location of the platform to the area above the compartments on the top of the cart. These actions, Ergotron contends, amount to a disavowal of claim scope, where Rubbermaid adopted the examiner's recognition of "the various movable work surfaces at the top of the cart." (Doc. Nos. 36-4; 36-5). Finally, Ergotron points to the drawings which demonstrate that the platform is consistently shown to be on the top of the

cart. (650 Patent, Figs. 1, 2A, 2B, 6B, 6C, 13, 14, 16 and 21A).

The Court finds Ergotron persuasive and construes the term "movable platform" to mean "movable surface at the top of the cart."

        10.      Height Adjustment Mechanism

Rubbermaid proposes the plain and ordinary meaning for the term "height adjustment mechanism" and "height adjustment mechanism for adjusting a height of the work platform relative to the base." To do otherwise would be to limit claim scope to a preferred embodiment and thereby commit the "cardinal sin of patent law" discussed in Phillips, 415 F.3d at 1320 (identifying "one of the cardinal sins of patent law—reading a limitation from the written description into the claims.").

Ergotron counters that construing the term, as used in claim 9, in the plain and ordinary meaning would cover a limitless number of height adjustment mechanisms without any disclosure in the 650 patent to warrant such broad coverage.

Citing Flo Healthcare Solutions, LLC v. Kappos, Rubbermaid claims that the Federal Circuit rejected the same "means plus function" term that Ergotron espouses. 697 F.3d 1367, 1372 (Fed. Cir. 2012). Ergotron counters that Flo is inapposite as the patent at issue there included a long list of possible height adjustment mechanisms which the Federal Circuit recognized in finding that the patentee used the term "to designate a class of structures." 697 F.3d at 1374-75. Ergotron argues that, unlike the patentee in Flo, Rubbermaid disclosed only a single structure for the height adjustment mechanism in claim 9.

The Court finds Ergotron persuasive in this claim and construes the term "height adjustment mechanism" and "height adjustment mechanism for adjusting a height of the work

13

platform relative to the base" to mean a "gas driven piston and button that controls the flow of the gas driven piston."

11. At Least One Compartment

Rubbermaid proposes the plain and ordinary meaning for the term "at least one compartment." In support, Rubbermaid argues that the patent never suggests that number of compartments be construed as a collective unit rather than as the one requisite compartment. Ergotron, in contrast, proposes that the term be construed as "all of the one or more compartments."

The Court construes the term "at least one compartment" to mean "one or more compartments."

12. The At Least One Compartment

Rubbermaid proposes the plain and ordinary meaning for the term "the at least one compartment." As support, Rubbermaid contends that the applicable language in the 650 patent refers consistently to the one required compartment. Rubbermaid argues that it would be improper to construe the work surface to be disposed above the top of all compartments where the patent language specifies it to be disposed above "a top of the at least one compartment." Rubbermaid cites to Howmedica Osteonics Corp. v. Wright Medical Technology, Inc., where the Federal Circuit, construing similar terms, interpreted "the at least one condylar element" to mean one condylar element even though the item in question contained more than one condylar element. 540 F.3d 1337, 1351-52 (Fed. Cir. 2008).

Ergotron proposes that the term be construed as "all of the one or more compartments." As support, they argue that claims 1 and 9 require that the work surface be "disposed above the

14

top of the at least one compartment," and that the use of the definite article ("the") expressly refers back to the antecedent "at least one compartment." Thus, if there is only one compartment, Ergotron argues, the phrase must refer back to that compartment; if there is more than one compartment, it must refer back to all compartments as a collective.

The Court finds Ergotron more persuasive and construes the term "the at least one compartment" to mean "all of the one or more compartments."

### 13. Disposed Above A Top of the At Least One Compartment

For the same reasons as the previous two terms, Rubbermaid proposes that the plain and ordinary meaning be ascribed to the term "disposed above a top of the at least one compartment." Ergotron opposes such construction and argues that the Court should construe phrase "disposed above a top of the at least one compartment" to mean "located above all of the one or more compartments." This, Ergotron argues, is consistent with Rubbermaid's actions during prosecution, in which, following rejection, they amended claims 1 and 9 to include the limitation that "the work surface is disposed above a top of the at least one compartment." Ergotron posits that this action distinguished prior art by claiming that the work surface in Rubbermaid's invention is located at the top of the cart. (Doc. No. 36-4. Interview Summary). Additionally, this distinction is consistent with every embodiment described and shown in the 650 patent.

The Court finds Ergotron more persuasive and construes the term "disposed above a top of the at least one compartment" to mean "located above all of the one or more compartments."

## III. CONCLUSION

For the forgoing reasons, the Court construes the disputed terms as expressed above and

15

in the attached chart.

Signed: 3/11/2014

Robert J. Conrad, Jr.
United States District Judge

| Disputed Term | Court's Construction |
|---|---|
| "Work platform" | "A height adjustable set of components configured to be raised and lowered together" |
| "Compartment" —or— "Compartment for containing an item within the compartment" – or— "compartment for containing an item" | "A drawer or other type of container that is enclosed when inserted into the work platform of which it forms a part" |
| "Driver" –or –"Driver configured to releasably position the work platform" | "Gas driven piston" |
| "Plurality of heights" | "At least three heights" |
| "Laptop platform" | "Moveable top surface of the cart that holds a laptop" |
| "Work surface" | "Curved surface near the top of the cart that is large enough to dispense medication or hold work papers" |
| "Wherein the work surface is movable" – or — "wherein the work surface can be moved" | "A curved surface near the top of the cart that is large enough to dispense medication or hold work papers is movable along a curved path toward the user" |
| "Actuator for controlling the driver" | "Button that controls gas flow of the gas driven piston" |
| "Movable platform" | "Movable surface at the top of the cart" |
| "Height adjustment mechanism" —or— "height adjustment mechanism for adjusting a height of the work platform relative to the base" | "Gas driven piston and button that controls the flow of the gas driven piston" |
| "At least one compartment" | "One or more compartments" |
| "The at least one compartment" | "All of the one or more compartments" |
| "Disposed above a top of the at least one compartment" | "Located above all of the one or more compartments" |

16